DAVIS & GILBERT LLP
Paul F. Corcoran (PC 7432)
Dominick R. Cromartie (DC 3095)
1740 Broadway
New York, NY 10019
(212)468-4800
*Attorneys for Ogilvy & Mather Worldwide, Inc.
and WPP Group PLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYNTHIA PARDY,<br><br>            Plaintiff,<br><br>    -against-<br><br>BILL GRAY, SHELLY LAZARUS, OGILVY & MATHER WORLDWIDE, INC., WPP GROUP, PLC, STUART FRIEDEL, DAVIS & GILBERT LLP, GLORIA HALL, CYNTHIA RIVET, TORE KLAESSON, GORDON TAN, BARBARA PELHAM, ZACH NELSON, JOHN DOE/JANE DOE, IBM CORPORATION<br><br>            Defendants. | Civ. Case No. 06-CV-6801 (JBW)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S RULE 56 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

       Defendants respectfully submit the following pursuant to Local Rule 56.1 in response to plaintiff's Rule 56.1 Statement of Undisputed Facts in support of her cross-motion for partial summary judgment:

       1.    Denied. Plaintiff and her undisclosed attorney plainly concocted a Sarbanes-Oxley claim against defendant Ogilvy & Mather Worldwide, Inc. ("Ogilvy") by submitting, on December 12, 2005, letters to Ogilvy management after plaintiff's final 30-day

probation had run. (Hall Dec. at ¶ 27; "Mission Accomplished" e-mail of December 19, 2005 at Ex. J to Hall Dec.)

        2.     Denied. Plaintiff deliberately confounds general awareness of Sarbanes-Oxley obligations with plaintiff's concoction of a frivolous Sarbanes-Oxley claim in December 2005. (Plaintiff's Appendix at p. 12.) Deny knowledge or information sufficient to attest to whether plaintiff came to O&M as a highly recommended employee.

        3.     Denied. Plaintiff overstates the significance of the team awards she won while working at Ogilvy. Plaintiff was only one member of a team of account managers and creative personnel responsible for the ads which won the awards. Notably, several of the awards she cites preceded the 90-day probation period she was placed on in 2003 as a result of poor performance reviews. That 2003 probation preceded by more than two years any claim of protected activity. (Hall Dec. at ¶ 7.)

        4.     Denied. (Hall Dec. II at ¶¶ 6-9).

        5.     Denied; except admit that much of the Thailand shoot was planned, and approved by IBM, through Gloria Hall's efforts long before plaintiff was assigned to cover the shoot to ensure Ogilvy and IBM policies were followed. (Hall Dec. II at ¶ 18.)

        6.     Denied. This allegation contradicts plaintiff's own version of the events set forth in her December 12th letter to Ogilvy management. (December 12, 2005 Sarbanes-Oxley letter at p. 5; Hall Dec. at ¶ 18.)

7. Denied. This allegation also conflicts with plaintiff's December 12, 2005 Sarbanes-Oxley letter to Ogilvy management, which makes no mention of any triple bid violation. (December 12, 2005 Sarbanes-Oxley letter; Hall Dec. at ¶ 18.)

8. Denied. This allegation also conflicts with plaintiff's December 12, 2005 Sarbanes-Oxley letter to Ogilvy management, which makes no mention of any triple bid violation. (December 12, 2005 Sarbanes-Oxley letter; Hall Dec. at ¶ 18.)

9. Admit that Hall made full disclosure of her concerns regarding Gordon Tan to IBM, and obtained IBM's approval to use Tan, and that no documents have been produced to substantiate these facts; and note that the issue is wholly irrelevant to any claim for which plaintiff has standing in this Court.

10. Denied. Plaintiff deliberately distorts and misrepresents the content of the e-mail upon which she relies; and no such allegation was ever made in plaintiff's Sarbanes-Oxley letter of December 12, 2005. (Hall Dec. at ¶ 18 and 23; Plaintiff's Appendix at p. 12).

11. Admitted.

12. Denied. Plaintiff deliberately misrepresents and misconstrues the e-mail referenced in paragraph 24 of her declaration. No such Sarbanes-Oxley warning was issued on May 26, 2005. (Plaintiff's Appendix at p. 12.)

13. Denied. Plaintiff deliberately misrepresents and misconstrues the e-mail referenced in paragraphs 26-29 of her declaration. (Plaintiff's Appendix at pp. 14-16.)

14. Deny knowledge or information sufficient to attest to what plaintiff was advised, or by whom. However, plaintiff was sent to Thailand by Hall to oversee Tan's handling of talent payments and releases and was specifically charged with the responsibility to see that no discriminatory payments were made, and that all releases were properly executed. (Hall Dec. at ¶¶ 17, 20 – 22.)

15. Denied. Though local talent was expected to be from Thailand, and to have difficulty with English, plaintiff was specifically sent on the Thailand shoot to ensure that all local employees were properly paid and that their releases were properly executed. Plaintiff's claim that she could not communicate with the local talent is specious. Translators are certainly available in Thailand. (Hall Dec. at ¶¶ 20 – 24.)

16. Denied. Plaintiff's allegations at paragraph 16 are wholly irrelevant to any claim before this Court; and plaintiff once again totally distorts and misrepresents the import of the e-mail cited at paragraph 32 of her declaration. (Plaintiff's Appendix at p. 19.).

17. Admitted; however Hall also cautioned plaintiff during those same e-mails to fulfill the purpose for which she was sent to Thailand—to make sure that all paperwork met the company's standards, including paperwork relating to talent payments and releases. Plaintiff failed to do her job in that regard, and Hall was unaware of plaintiff's failings when she sent the cited e-mails. (Hall Dec. at ¶ 22).

18. Denied; Plaintiff's allegations at paragraph 18 are wholly irrelevant to any claim before this Court; and plaintiff once again totally distorts and misrepresents the import of the e-mail cited at paragraph 36 of her declaration. (Plaintiff's Appendix at p. 24.)

19. Denied. Plaintiff now deliberately fabricates conspiracy charges which were not raised before her December 12, 2005 letter, and therein only as speculative surmise. Paragraph 37 of her declaration, to which paragraph 19 of her Rule 56.1 Statement cites, deliberately misrepresents and distorts the input of the e-mail cited at paragraph 37. The July 28, 2005 e-mail between Claesson and Tan actually defeats plaintiff's frivolous conspiracy claim. (Hall Dec. at ¶ 18; Plaintiff's Appendix at 27.)

20. Denied. Here again, plaintiff's Rule 56.1 Statement and Declaration deliberately distort the e-mail upon which they are based. (*See* Response to ¶ 19 above; Hall Dec. at ¶ 18).

21. Denied. Plaintiffs did not make any allegation of mail or wire fraud prior to December 12, 2005. The allegations regarding Gordon Tan's payment and release practices in Thailand as reported to Gloria Hall in July 2005 do not constitute protected activity, but merely oversight reports about questionable conduct, which plaintiff had no reason to believe constituted violations of 18 U.S.C. §§ 1341, 1343 or any of the other designated statutes covered by 18 U.S.C. § 1504(a). Allegations of fraudulent conduct by her supervisors were not provided to anyone until plaintiff's December 12, 2005 letter to Ogilvy management. Allegations of fraud by her supervisor could not have been presented to Carlene Zanne in August 2005, as plaintiff's declaration acknowledges that she did not even suspect that her supervisors were engaged in fraudulent conduct until after her meeting with Stuart Friedel, which she now places in October 2005. (Plaintiff's Dec. at ¶ 56). Moreover, it was Gloria Hall who forwarded Pardy's Gordon Tan/Tore Claesson memo to Carlene Zanne in July 2005. (Hall Dec. at Ex. F.) And, plaintiff made no mention of any whistle-blowing reports to Zanne in her administrative complaint filed with the DOL in February 2006. (Exhibit E to Declaration of Paul Corcoran in Support of

Defendants' Motion to Dismiss Pursuant to Federal Rules Civ. P. 9(b) and 12(b)(2), (3) and (6), dated February 21, 2007).

22. Denied. Plaintiff now goes to great lengths to place her meeting with Stuart Friedel in "October 2005" (Plaintiff Dec. at ¶ 40, 56). As paragraph 56 of Plaintiff's Declaration admits that she did not suspect Tan's fraud would not be remedied until the Friedel meeting, this confirms that plaintiff did not make any allegations of fraud by her supervisors until December 12, 2005—after her November 14th final probation was imposed. (Exhibit E Corcoran Dec., dated February 21, 2007.)

23. Denied. Prior to December 12, 2005, plaintiff reported only alleged discriminatory payment practices in Thailand. (*See and compare* plaintiff's July 2006 Memos with her December 12, 2005 letter to Ogilvy management). Since plaintiff admittedly had no reason to believe the company would not remedy Tan's conduct before her meetings with Stuart Friedel in September or October of 2005 (Pardy Declaration in Support of Partial Summary Judgment at ¶ 56), she engaged in no protected activity prior to December 12, 2005. (*See and compare* Plaintiff's July 2006 Memos with her December 12, 2005 letter to Ogilvy management).

24. Denied. (Hall Dec. at ¶ 18.).

25. Denied. (Hall Dec. at ¶ 18.)

26. Denied. Plaintiff's December 12, 2005 letter places her meeting with Stuart Friedel on September 8, 2005, two months before she was placed on probation. (Corcoran Dec., dated February 21, 2007 at Ex. D, p. 3).

27.  Denied. (Hall Dec. at ¶ 10).

Dated: June 20, 2007
New York, New York

           DAVIS & GILBERT LLP

           *[signature]*
           Paul F. Corcoran
           Dominick Cromartie
           1740 Broadway
           New York, NY 10019
           (212) 468-4800
           *Attorneys for Ogilvy & Mather Worldwide,*
           *Inc. and WPP Group, PLC*

1128694