USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 7/15/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CYNTHIA PARDY,

Plaintiff,

v.

BILL GRAY, et al.,

Defendants.

---

07 Civ. 6324 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, U.S.D.J.

Plaintiff Cynthia Pardy filed this lawsuit, pro se, in the Eastern District of New York, on December 28, 2006, alleging claims under (1) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.; (2) the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A; (3) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; and (4) claims under New York State law for breach of contract. The Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2),(3),(6), and Rule 9(b), or alternatively for transfer of venue pursuant to 28 U.S.C. § 1406(a). On April 25, 2007, the Honorable Jack Weinstein, of the Eastern District of New York, converted the Defendants' motion to dismiss to one for summary judgment. On June 21, 2007, Judge Weinstein granted the Defendants' motion for transfer of

venue to the Southern District of New York. At a conference with this Court on September 7, 2007, the parties agreed that Plaintiff would have an opportunity to submit supplemental papers without limitation in opposition to Defendants' motion for summary judgment and that the Court would rule on the supplemental record. Thereafter, Plaintiff also moved for summary judgment. For the following reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motions are DENIED.

BACKGROUND

Plaintiff Cynthia Pardy was hired in September 2000, as a Senior Art Buyer at Ogilvy & Mather ("O&M"), a wholly owned subsidiary of WPP Group plc. (Corcoran Decl. Ex. F.)[1] During her employment, Plaintiff reported directly to Cynthia Rivet and Gloria Hall, Co-Managers of Art Buying. (Id.) In November, 2003, Plaintiff was placed on probation after a finding that she was performing below expectations in eleven out of the twelve categories in which she was rated. (Hall Decl. ¶¶ 3-6.)[2] Due to some improvement in Plaintiff's job performance, she was not terminated following that probation period. (Id. ¶ 9.)

[1] "Corcoran Decl." refers to the Declaration of Paul Corcoran dated, Feb. 21, 2007. (dkt. no. 4.) "Dkt. no. _" refers to the docket in Prady v. Gray et al., 06 Civ. 6801 in the Eastern District of New York.

[2] "Hall Decl." refers to the Declaration of Gloria Hall dated, May 9, 2007. (dkt. no. 56.)

In May or June 2005, Gloria Hall directed Plaintiff to prepare for a trip to Bangkok, Thailand, for O&M's client, IBM. (Compl. at p.3.)[3] Plaintiff alleges that she was sent because Hall was concerned with Tore Claesson, another O&M employee, based on a previous incident in Malaysia involving allegations of questionable invoices, and his associate, Gordon Tan, a contractor of O&M. (Id.) During the shoot, Plaintiff informed Hall that Tan was not paying the supporting talent the amount agreed upon by O&M and IBM (see Pardy App. at 23.)[4]; she also suspected that Tan was submitting invoices for location fees in excess of what he actually paid. (See Def. Statement Ex. D.)[5] The Complaint also alleges that Tan instructed Plaintiff and three other employees to stay at a "sex hotel" which she refused to do. (Compl. at 4.) Tan responded to Plaintiff's complaints about the hotel by simply saying, "I'll get you a massage." (Id.)

On July 6, 2005, Plaintiff returned to New York and wrote a letter to Gloria Hall outlining her concerns with the Bangkok shoot. (Pardy App. at 28.) In a letter to Hall, Plaintiff

---

[3] Reference is made to the page number in the Complaint rather than the paragraph number because the Complaint's paragraphs are not properly numbered.

[4] "Pardy App." refers to the Appendix in support of Cynthia Pardy's declaration, dated June 11, 2007. (dkt. no. 67.)

[5] "Def. Statement" refers to Defendant's Rule 56.1 Statement in Support of its Motion for Summary Judgment, dated May 24, 2007. (dkt. no. 56.)

invoked her "responsibilities to the company and Securities and Exchange Commission" noting that "there may be Sarbanes-Oxley issues lurking in the manner in which company funds were supervised." (Id.) In a letter dated July 13, 2005, Gloria Hall responded to Plaintiff's letter and, after disputing the merits of many of Plaintiff's complaints, assured her that the matter would be handled impartially and would not impact her future at O&M. (Def. Statement Ex. F.) Plaintiff alleges that she attended several meetings with representatives of O&M, including a September 2005 meeting with Carlene Zanne, Director of Human Resources, and a meeting with an attorney from Davis & Gilbert LLP. (Pardy Decl. ¶¶ 39-40; Zanne Decl. ¶ 7.)[6]

Approximately four months later, on November 14, 2005, Plaintiff was informed that three different account groups expressed an unwillingness to continue working with her and she was placed on a thirty-day period of probation. (See Corcoran Decl. Ex. B.) On December 12, 2005, Plaintiff sent a letter addressed to two officers of O&M, Bill Gray, and Shelly Lazarus, as well as the "WPP Board Members." (Id. Ex. D.) The letter outlined what Plaintiff referred to as "serious fraud, theft, and mismanagement" at Ogilvy & Mather. (Id.) On January 11, 2006, Plaintiff's employment was terminated. (Id. Ex. F.) On

---

[6] "Zanne Decl." refers to the declaration of Carlene Zanne, dated May 9, 2007. (dkt. no. 56.)

February 8, 2006, Plaintiff filed a complaint with the Department of Labor, under the whistleblower provision of the Sarbanes-Oxley Act, alleging that she was discharged from her employment in reprisal for her communications to her O&M superiors regarding fraudulent invoices related to the Bangkok photo shoot. (See Corcoran Decl. Ex. E.) The Secretary of Labor, in a decision not issued until January 4, 2007, ruled that Plaintiff failed to establish her prima facie case because she was unable to demonstrate that her protected activity was a contributing factor in her termination. (Corcoran Decl. Ex. F.)

DISCUSSION

A. Pro Se Litigant

It is well established that "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted). This policy is driven by an understanding that implicit in the right of self-representation is the obligation upon a court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of their legal rights due to their lack of training. Id. at 475.

B. Summary Judgment Standard

Summary Judgment may only be granted if there is no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c); see

also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of presenting evidence that it believes demonstrates the absence of a genuine dispute of fact on each material element of her claim. See Celotex, 477 U.S. at 323; see also FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994). If the moving party carries his burden, the non-moving party must then "set out specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e).

In considering a summary judgment motion, the Court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Nevertheless, a party opposing summary judgment "must 'demonstrate more than some metaphysical doubt as to the material facts' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004)(quoting Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d. Cir. 1993)). Thus, a court shall grant summary judgment if no rational fact-finder "could find in favor of the nonmoving party because the evidence to support its case is so slight." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

C. RICO Claims

Plaintiff's RICO claim is predicated on the alleged fraudulent billing of IBM by O&M employees (Compl. at 7-8.), in violation of 28 U.S.C. §§ 1341, 1343. The RICO civil liability statute, however, confers standing only on "[a]ny person injured in his business or property by reason of a violation of section 1962 [the criminal RICO statute]." 18 U.S.C. § 1964(c). The clause "by reason of" has been held to "limit standing to those plaintiffs who allege that the asserted RICO violation was the legal, or proximate, cause of their injury, as well as a logical, or but for cause." Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001). The Supreme Court recently reiterated the proximate cause requirement and held that when a court is evaluating a RICO claim for proximate causation, "the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006). The Court of Appeals has specifically held that "loss of employment . . . for reporting or refusing to participate in an enterprise engaging in a pattern of racketeering activity is not injury sufficient for standing." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990). The rationale for this rule is that "civil RICO liability does not extend to

deterring any illegal act such as retaliatory firings for which there are state and common law remedies." Id.

Here, without considering whether Plaintiff has properly alleged a criminal enterprise and a pattern of racketeering activity, the RICO claim fails for lack of standing. Plaintiff alleges that O&M participated in a scheme to defraud IBM. In her complaint, Plaintiff does not specify what injury she suffered as a result of that alleged fraud. Even assuming she was fired for reporting the Bangkok fraud to senior management, Plaintiff has no standing to assert the RICO claim because the alleged RICO violations did not proximately cause Plaintiff's injury. Plaintiff does not allege that it was the defrauding of IBM that caused her to be terminated but rather alleges that it was the fact that she reported the fraud. Thus, the pattern of racketeering did not proximately cause her injury, and therefore she does not have standing to assert a RICO claim.

D. Breach of Contract

In Count Two of her complaint, Plaintiff claims that although she was an at-will employee of O&M, her dismissal violated the "important public policies" furthered by ensuring legal compliance by her employer. (Compl. at 11-12.) She also asserts that New York contract law includes an implied covenant of good faith and fair dealing by the parties and that her termination breached that implied covenant. (Id.) Under New York

law, "employment for an indefinite or unspecified term" is presumed to be "at will and . . . freely termina[ble] by either party at any time without cause or notice." Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 137 (2d Cir. 2007) (quoting Horn v. N.Y. Times, 100 N.Y.2d 85 (2003)). New York has "consistently declined to create a common-law tort of wrongful or abusive discharge, or to recognize a covenant of good faith and fair dealing to imply terms grounded in a conception of public policy into employment contracts." Horn, 100 N.Y.2d at 96. Ultimately, a claim based on the implied covenant of good faith and fair dealing "may not be used as a substitute for a nonviable claim of breach of contract." Sheth v. N.Y. Life Ins. Co., 273 A.D.2d 72, 709 N.Y.S.2d 74, 75 (1st Dep't 2000).

Here, it is undisputed that Plaintiff was an at-will employee, and therefore, under New York State law, her contract claims must be dismissed.

E. Sexual harassment claim

Plaintiff alleges sexual harassment in Count Three of the complaint. Under Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)(per curiam). Exhaustion of administrative remedies through the EEOC is an essential element of Title VII and is a

"precondition to bringing such claims in federal court." Id. In this case, Plaintiff never filed a complaint with the EEOC, and therefore her Title VII claims for sexual harassment must be dismissed.

F. Sarbanes-Oxley Retaliation Claim

The Sarbanes-Oxley claim is a closer question. Plaintiff initially filed a complaint with the Department of Labor, but because a ruling was not issued within 180 days, this Court may hear the claim. See 18 U.S.C. § 1514A (b)(1)(B).

The Sarbanes-Oxley Statute provides that:

> No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), or any officer, employee, contractor . . . may discharge . . . or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee--
>
> (1) to provide information . . . which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by . . .
>
> (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct);
>
> 18 U.S.C. § 1514A(a).

To assert a whistleblower claim under SOX, a plaintiff must show by a preponderance of evidence that 1) she engaged in protected activity; 2) the employer knew of the protected activity; 3) she suffered an unfavorable personnel decision; and 4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action. See Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006); see also Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365, 1375 (N.D. Ga. 2004). Protected activity "must implicate the substantive law protected in Sarbanes-Oxley definitively and specifically." Fraser, 417 F. Supp. 2d at 322 (internal quotations omitted). It is sufficient for a plaintiff to show that she reasonably believed, based on the knowledge available to her, considering her training and the circumstances, that her employer was violating the applicable federal law. See Mahony v. Keyspan Corp., No. 04-CV-554-SJ, 2007 WL 805813, at *5 (E.D.N.Y. Mar. 12, 2007). Although a plaintiff need not show actual violation of the law or cite a particular statute she believed was being violated, the claims must have some degree of specificity. See id.; Fraser, 417 F. Supp. 2d at 322.

If a plaintiff can make such a showing, the defendant employer can still avoid liability if it shows by clear and convincing evidence that it would have taken the same

unfavorable personnel action in the absence of protected behavior. See 18 U.S.C. § 1514A (b)(2)(c); 49 U.S.C. § 42121 (b)(2)(B)(ii); Collins, 334 F. Supp. 2d at 1375-76.

The first issue to address here is whether Plaintiff engaged in protected activity. In July 2005, Plaintiff wrote to her superior, Gloria Hall, that "it is important to review the history of disbursements and possible misuse of cash authority" on the Bangkok photo shoot for IBM and Mr. Tan's conflicts of interest. (Pardy App. at 30.) In her complaint, Plaintiff elaborates that O&M violated the wire and mail fraud statutes by placing documents in the U.S. Mail and using interstate telephone communications to fraudulently bill IBM. (Compl. at 8-9, 13.) It is clear from the record that Plaintiff's supervisors were aware of her allegations of fraud. (See Pardy Statement ¶¶ 21-23;[7] Corcoran Decl. Ex. D.) Thus, Plaintiff engaged in protected activity.

The question becomes whether Plaintiff can demonstrate that her allegations of fraud were a contributing factor in her termination. The words "a contributing factor" mean any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision. Marano v. Dep't of Justice, 2 F.3d 1137, 1140 (Fed. Cir. 1993). One

[7] Reference is to Cynthia Pardy's Rule 56.1 Statement dated June 11, 2007. (dkt no. 65.)

consideration in proving causation is the temporal proximity between the protected activity and the unfavorable personnel decision. See Mahony 2007 WL 805813; Collins, 334 F. Supp. 2d at 1379; 29 C.F.R. § 1980.104(b). Mere temporal proximity, however, does not compel a finding of retaliatory intent. See McClendon v. Hewlett Packard, Inc., 2006-SOX-29 (ALJ Oct. 5, 2006). In a Title VII case, the Supreme Court stated that even cases that accept mere temporal proximity to establish causation "uniformly hold that the temporal proximity must be very close." Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal quotations omitted); see also Moser v. Indiana Dept. of Corrections, 406 F.3d 895, 905 (7th Cir. 2005) (in the Title VII context, "suspicious timing alone rarely is sufficient to create a triable issue").

It is unclear what the outer limits of temporal proximity are in the SOX context. Compare Sussberg v. K-Mart Holding Corp., 463 F. Supp. 2d 704 (E.D. Mich. 2006) (granting summary judgment to defendant where there was a five-month gap between protected activity and termination and evidence of ongoing performance problems before and after the protected activity) with Mahony, 2007 WL 805813 (thirteen month gap can still be sufficient for temporal proximity). Outside the SOX context, the Court of Appeals has noted that to date it "has not drawn a bright line to define the outer limits beyond which a temporal

relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554 (2d Cir. 2001). In Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990), an age discrimination case, the Court of Appeals held that the passage of three months is too long to suggest a causal relationship between an employee's complaint and the alleged retaliation.

Here, other than the temporal proximity between her report of the Bangkok shoot and her termination, Plaintiff has not proffered any evidence indicating that her report was a contributing factor to her termination, and Carlene Zanne, Director of Human Resources at O&M, states in a sworn declaration that Plaintiff's report concerning the Bangkok shoot "had nothing to do with her probation and termination." (Zanne Decl. ¶ 20.) As for the temporal proximity, the only evidence contained in the record of Plaintiff's reporting protected activity is the letters sent to Hall in July. Plaintiff was terminated approximately six months later in January 2006.[8] The

---

[8] Plaintiff also claims that she contacted some other supervisors in the interim, but the substance of the allegations she made to those other supervisors is unclear, and there is nothing to suggest that it actually contained protected activity. Her December letter to Grey was written after she was placed on the (*continued on next page*)

gap of six months between July 2005 and January 2006 is not sufficiently proximate to permit the inference that the protected activity was a contributing factor to her termination, and thus Plaintiff has failed to establish her prima facie case.

Alternatively, even assuming that Plaintiff has set out a prima facie case and proffered evidence that her report was a contributing factor in her termination, O&M has demonstrated by clear and convincing evidence that it would have fired Plaintiff even in the absence of her report.

In 2003, Plaintiff was placed on probation for performance-related reasons including "fail[ure] to communicate valuable client information," being "argumentative with her managers," and "not being able to solve problems in a positive manner." (Hall Decl. ¶¶ 3-4.) Although Plaintiff showed "some" improvement, and was not terminated at that time (id. ¶ 9), Plaintiff was placed back on probation in November 2005 (id. ¶ 12). The 2005 Notice of Probation ("Notice") quotes from complaints received from several account groups within O&M, including, for example, a statement that "[o]verall, we as a team (account team and creative), do not want to work with Cindy Pardy again. The process has been far too difficult" and proceeds to list specific complaints. (Corcoran Decl. Ex. B.)

---

*(continued from previous page)*
probation that led to her termination and therefore cannot be relied on.

The Notice informs Plaintiff that, as a result, those accounts that did not want to work with her would have to be "re-routed away" from Plaintiff. (Id.) The Notice states that these issues are "serious enough for [Plaintiff] to have to go back on probation." (Id.) She was informed that "[y]our probation starts immediately and lasts 30 days from [November 14, 2005]," that it was her "final warning" and unless Plaintiff corrected these issues, she will be terminated. (Id.)

Plaintiff made no response to the Notice of Probation until after the thirty-day period had run, waiting until December 16 to respond. (See id. Ex. C.) Plaintiff termed her reply "a preliminary and incomplete response," and stated that she was "unable to provide a definitive response to the undocumented and apparently hearsay accusations contained" because there was "no specificity or detail . . . concerning the identity of the individuals" quoted in the Notice. In that response, and in her documents submitted to this Court (see, e.g., Pardy Decl. App. at pp. 50-104), Plaintiff never argued that the criticisms attributed to her co-workers were fabricated. Instead, she simply disagreed with the assessment of her performance made by the account groups quoted in the Notice, and stated that the comments were "inaccurate." To support her view, Plaintiff pointed to various e-mails, which, she claimed, demonstrated that she adequately performed her duties. (See Pardy Decl.

¶¶ 63-64 and App.) For example, in response to complaints that an account team no longer wanted to work with Plaintiff because she was difficult to work with, Plaintiff offered a 2004 e-mail from a supervisor on that account expressing "confidence" that "everything is under control." (See Pardy App. at 70.)

As a factual matter, isolated e-mails from earlier time periods are insufficient to counter the November 2005 complaints. As a legal matter, Plaintiff's own assessment of her performance is not cognizable on summary judgment; it is her employer's assessment that controls. See Ricks v. Conde Nast Publications Inc., 6 Fed. Appx. 74, 78 (2d Cir. 2001) (In a Title VII case, "an employee's disagreement with her employer's evaluation of her performance is insufficient to establish discriminatory intent."). On that topic, Ms. Zanne, the Director of Human Resources at O&M, states that during the probationary period, Plaintiff "failed to demonstrate the improvement required by the terms of her probation," (Zanne Decl. ¶ 17) hardly a surprising conclusion given that Plaintiff did not respond to the Notice until after the probationary period had expired. In sum, the record is undisputed that O&M received complaints of Plaintiff's poor performance from Plaintiff's co-workers and relied on those complaints in terminating her, and Plaintiff has proffered no cognizable evidence that O&M's reason for terminating her -- poor performance -- was pretextual. Thus,

even assuming that Plaintiff has put forth a prima facie retaliation case, O&M has shown by clear and convincing evidence that her termination was for performance-related issues unrelated to her Bangkok report. Because of the dispositions above, I do not reach Defendants' other arguments.

For the reasons set out above, Plaintiff's motion for summary judgment [dkt. no. 61] is DENIED and Defendants' motion for summary judgment [dkt. no. 60] is GRANTED. Plaintiff's other motions [dkt. nos. 10, 13, 15, 17, 18, 20, 21, 22, 24, 26, 32, 34, 47, and 61] are DENIED as moot.

SO ORDERED:

DATED: New York, New York
July 15, 2008

Loretta A. Preska

LORETTA A. PRESKA, U.S.D.J.